.EDWARD M. ILLINGSWORTH *vs.* BOSTON ELECTRIC LIGHT
COMPANY.

Suffolk.   January 16, 1894. — June 22, 1894.

Present: FIELD, C. J., ALLEN, MORTON, & BARKER, JJ.

*Personal Injuries caused by Wires of Electric Light Company — Evidence —
Due Care.*

In St. 1890, c. 404, § 1, requiring persons or corporations owning or operating a line
of wires over streets or buildings in a city suitably and safely to attach the
wires to strong and sufficient supports, the words "and insulate them at all
points of attachment" mean at the point of attachment to the supports.

In an action by a lineman employed in the fire alarm service of the city of Boston
against an electric lighting company for injuries received from contact with one
of its wires charged with electricity and left uninsulated, at a point close to a
frame structure owned by the defendant, and standing upon the roof of a
building owned by a third person, to the arms of which the company's wires
and those of the fire alarm service were attached, and upon which the plaintiff
in the performance of his duty was required to go, evidence is admissible, as
having some tendency to show that the wires of the fire alarm service were
attached to the structure by the permission of the defendant, and under some
contract with it whereby the city was to pay a portion of the expense of the
maintenance of such structure, that a bill was rendered by the defendant to the
city of Boston and paid by it for its proportionate part of the expense of
repairing the roof upon an adjoining building where there was another struc-
ture belonging to the defendant, and from which its wires and those of the fire
alarm service extended to the structure where the accident happened.

When several corporations use the structures owned by one of. them as supports
for separate lines of wire each carrying dangerous currents of electricity, it is
the duty of the owner of the structures, at common law, in the absence of any
agreement on the subject other than such as is involved in its permission to the
others to use such structures on payment of compensation, to exercise reason-
able care in seeing that its wires are kept, so far as is practicable, in a safe con-
dition at such places as the servants of the others are expressly or impliedly
licensed to go in performing their duties with reference to the wires attached to
such structures.

The plaintiff was employed in the fire alarm service of the city of Boston, which,
under an agreement with an electric lighting company, used the structures
owned by the company as supports for its lines of wire.   There was evidence
that, while the plaintiff in the performance of his duties was descending from
one of such structures, his pliers which he carried in his belt caught on a
wire belonging to the company, and that in reaching around to clear them he
received injuries by the contact of his hand with a joint of the wires left with-
out insulation at a point within twelve or fifteen inches of the structure. *Held,*
in an action against the company, that the defendant was negligent in leaving
the joints of its wires without insulation at such a point, and that the catching

of the plaintiff's pliers, or his reaching around to clear them, did not necessarily show negl gence, and that the question whether he was in the exercise of due care should have been submitted to the jury. *Held, also,* that, as the plaintiff was not a servant of the defendant, it could not be said that he took the risk unless he knew of it and voluntarily exposed himself to it.

Although mere contact with one wire charged with electricity which is bare and uninsulated may cause no injury unless other conditions supervene, yet the fact, if it be true, that other circumstances must occur to render such contact dangerous cannot excuse the company or persons operating the wires from taking reasonable care to have them properly insulated at points where the servants of others have the right of coming near to or in contact with the wires.

TORT, for personal injuries resulting from contact with a wire charged with electricity. Writ dated January 9, 1892.

At the trial in the Superior Court, before *Aldrich*, J., there was evidence tending to show that at the time of the accident, which happened on May 11, 1891, the plaintiff was employed as a lineman in the fire alarm department of the city of Boston, and that, acting under orders of the foreman of the department and in the course of his duties, he ascended an upright frame structure owned by the defendant erected upon the roof of the building numbered 114 Sudbury Street in Boston, owned by a third person, to the lower arms of which the defendant's wires were attached, while to the upper arms were attached the wires of the fire department; that after he had completed his work and was descending from the structure, the pliers which he carried in his belt caught on a wire belonging to the defendant, and in reaching around to clear them he touched a charged wire and received a shock that threw him to the roof. The plaintiff's hands were severely burned by the electricity, and his head was injured by the fall.

One Flavel, a fellow workman of the plaintiff, testified that he examined the wires of the defendant immediately after the accident, and saw two bad joints that were bare, and were not taped or insulated, and that these joints were about twelve or fifteen inches from the structure to the arms of which the defendant's wires were attached, and that the rest of the wire was insulated.

The plaintiff offered in evidence a bill rendered by the defendant to the city of Boston, and paid by it, charging said city a proportionate part of repairing the roof upon an adjoining building, where there was another frame of the defendant, and from which the wires of the defendant and said city extended to

and were fastened upon the defendant's frame where the plaintiff was injured. The evidence was admitted, and the defendant excepted.

One William Brophy, an electrical expert, testified for the defendant that alternating currents were used on its wires; that a person taking hold of a perfectly insulated wire would not receive sufficient electricity to injure him; that the defendant used as good insulation on its wires as could then be had in the market; and that the accident might have happened if the wires of the defendant had been in as good condition as skill. and knowledge could have made them.

The undisputed evidence was that mere contact with one electric light wire, even though bare and uninsulated, would cause no injury, unless other conditions supervened.

At the conclusion of the evidence the defendant requested the judge to rule that the action could not be maintained. The judge ruled as requested, and directed a verdict for the defendant; and the plaintiff alleged exceptions.

*S. D. Charles*, for the plaintiff.

*H. N. Sheldon & C. A. Snow*, for the defendant.

FIELD, C. J.   The exceptions recite that the court ruled that there was no evidence for the jury, and ordered a verdict for the defendant. The questions argued relate to the liability of the defendant on the evidence, under. Pub. Sts. c. 109, § 12, and St. 1883, c. 221; under St. 1890, c. 404, § 1; and at common law.

There is no evidence of any liability under Pub. Sts. c. 109, § 12, and St. 1883, c. 221. *Hector* v. *Boston Electric Light Co., ante*, 558.

We have no occasion to consider whether it was the intention of St. 1890, c. 404, to give a private person a cause of action for any violation of the first section of that statute, if, in consequence of such violation, such person suffers damage in his person or property. The only provision of that statute which it is contended applies to this case is the requirement that such a corporation as the defendant should suitably and safely attach its wires to strong and sufficient supports, "and insulate them at all points of attachment." This must mean at the points of attachment to the supports. The provision probably relates to

the pins or insulators, or other equivalent devices, by which electric wires are usually attached to supports. There is no evidence recited in the exceptions of any defect in the insulation of the wires of the defendant at the points of attachment to the support.

There was evidence of "two bad joints" on these wires about twelve or fifteen inches from the frame to one arm of which the defendant's wires were attached. These joints "were not taped or insulated," but "the rest of the wire was insulated." We infer that this is evidence that these joints never had been insulated in any manner. As the evidence was that "the plaintiff's hands were severely burned by the electricity," it was competent for the jury to find that the plaintiff's hands had touched a wire or wires of the defendant. On all the evidence in the case we think they might have found that his hand or hands touched the defendant's wires at one or both of the joints where the wire was not insulated. It is true that a witness for the defendant, an electrical expert, testified "that this accident might have happened if the wires of the defendant had been in as good condition as skill and knowledge could have made them," but the jury might have disbelieved this testimony, or, if they believed it, might also have believed that although such an accident was possible under certain conditions if the wires had been properly insulated, yet that it was much more likely to happen if the wires were not insulated. The same witness testified "that a person taking hold of a perfectly insulated wire would not receive sufficient electricity to injure him."

The evidence that a bill was rendered by the defendant to the city of Boston, and was paid by the city, "charging said city a proportionate part of repairing the roof upon an adjoining building, where there was another frame of the defendant, and from which the wires of the defendant and said city extended to and were fastened upon the defendant's frame where the plaintiff was injured," we think was properly admitted. It had some tendency to show that, by some arrangement between the defendant and the city of Boston, the city was paying a part of the expenses of maintaining the structures on buildings to which the wires of the defendant and those of the city were attached, and that therefore the city of Boston attached the wires of its

fire alarm service to the defendant's structure on the building numbered 114 Sudbury Street, where the accident happened, by permission of the defendant, and under some contract or arrangement whereby the city was to pay the defendant something for the maintenance of such structures.

The question then is, When two business corporations, or two persons under some agreement between themselves, use the same structures, owned by one of them, as supports for separate lines of wire used by each for the transmission of dangerous currents of electricity, what is the duty at common law which each owes to the other in regard to the care each must take to have its wires in a reasonably safe condition at or near the structures where the servants of the other have occasion to go, in the usual course of business, and where they must come near to or in contact with the wires? Such servants, when so employed, are more than mere licensees, taking advantage, for their own benefit or that of their employer, of the passive acquiescence of the licensor. If they are licensees at all, the license until it is revoked is coupled with an interest. The two corporations or persons have in a sense a common interest in the maintenance and use of the structures to which the wires of each are attached, and each, we think, should be under the same obligation to the other as persons having common rights in a place or passageway are under to one another not negligently to place a dangerous substance on the common territory, where it reasonably may be anticipated that others having common rights may be injured by it. The purpose for which the structures are used renders some danger from electrical currents inevitable, but the danger ought to be made as small as is practicable by the exercise of reasonable care.

In the absence of any agreement on the subject other than what is involved in the permission of the owner of the structures to the other to use them in common for the support of electric wires on paying some compensation, we are of opinion that the duty of the owner of the structures is to exercise reasonable care in seeing that his wires are kept, so far as is practicable, in a safe condition at such places as the servants of the other are expressly or impliedly licensed to go in performing their duties with reference to the wires attached to such structures. Under

this rule, there was evidence for the jury that the defendant was negligent in leaving two joints of its wires without insulation within twelve or fifteen inches of the frame on which the plaintiff, in the course of his duty as a person employed in the fire alarm service of the city of Boston, was required or expected to go. We of course express no opinion upon the liability of the city for the condition of the wires of its fire alarm service.

It is contended that the plaintiff took the risk, or that he offered no evidence that he was in the exercise of due care. As the plaintiff was not a servant of the defendant, it cannot be said that he took the risk unless he knew of it and voluntarily exposed himself to it, and none of these things is necessarily to be inferred from the evidence. Whether he was in the exercise of due care, we think, was for the jury. It appears that the wires of the defendant were insulated, except at these two joints, and the plaintiff reasonably may have expected that the wires about the frame were entirely insulated, and we cannot say, as matter of law, that he was negligent in not seeing the uninsulated condition of these joints. It does not necessarily show negligence that his pliers got caught on another wire, although this may have been the cause of his injury. It was not necessarily negligent that he reached round with his hand to clear the pliers, although it may be that by this movement his hand was extended farther from the post to which the arms were fastened which held the wires than otherwise he would have extended it. We cannot say, as matter of law, on the evidence, that his hand or hands in this movement did not touch one or both of the joints, and that this was the cause of the injury.

The exceptions recite that "the undisputed evidence was that mere contact with one electric light wire, even though bare and uninsulated, would cause no injury, unless other conditions supervened," but there is no contention that these other conditions do not often occur. The fact that other conditions must occur to render contact with such wires dangerous, if it be true, cannot excuse the defendant from taking reasonable care, in view of all the circumstances likely to occur, to have its wires properly insulated at points where the servants of another have the right derived from the defendant of coming near to or

in contact with the wires.   We are of opinion that the questions
of the defendant's negligence and of the plaintiff's due care were
for the jury.                                              *Exceptions  sustained.*