(67 App. Div. 212.)

### WELLS v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. December 23, 1901.)

1. RAILROADS—INJURY TO PERSONS ON TRACK—DEGREE OF CARE.

    An elevated railroad company owes to the employé of a switch company, which is putting in a switch system on its tracks, the exercise of such care to avoid injuring him as a man of ordinary experience and prudence would exhibit under like circumstances.

2. SAME—DEFENDANT'S NEGLIGENCE—QUESTION FOR JURY.

    Plaintiff's intestate, an employé of the switch company putting in a switch system for defendant railroad company, was killed by defendant's engine. Evidence examined, and *held* that the question of defendant's exercise of due care to avoid the accident was for the jury.

**3. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.**
Plaintiff's intestate, an employé of the switch company putting in a switch system for defendant railroad company, was killed by defendant's engine. Evidence examined, and *held* that the question of intestate's contributory negligence was for the jury.

Appeal from trial term.

Action by Mary Wells, as administratrix, against the Brooklyn Heights Railroad Company. From a judgment for plaintiff, and from orders refusing to direct a verdict and denying a motion for a new trial (68 N. Y. Supp. 305), defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

J. E. Oeland, for appellant.
E. J. McCrossin, for respondent.

JENKS, J. The place of the accident was a loop in the elevated railroad system of the defendant, where there were several tracks, signals, switches, and a signal tower. For some weeks the Union Switch Company had been at work there for the defendant, putting up a signal tower, connecting switches and signals and interlocking tracks. The plaintiff's intestate was a blacksmith, who had been employed by the switch company in this work. There was a blacksmith's forge at this place upon the surface of the defendant's structure. The intestate had not been at work for about a week, but on the day of the accident he had returned to this place. The version of the plaintiff is that on this day her intestate was at his work. The version of the defendant is that he came back for work, but was told that he could not work on that day, but that he might be taken on the following morning or thereafter. The learned trial justice submitted the question to the jury, and I think that the evidence was sufficient to warrant a finding that the intestate was a workman for the switch company on the day of the accident.

If this was his status, the question arises, what was the obligation of the defendant to him? In Dempsey v. Railroad Co., 81 Hun, 156, 30 N. Y. Supp. 724, the defendant contracted with G. to repair the roof of its train shed. G.'s subcontractor employed plaintiff's intestate. The defendant placed a tool car for the use of the contractor upon its track, and in this car the workmen kept their luncheons. The defendant knew of such particulars, and it appeared that the workmen went to and from this car through an opening between cars standing upon defendant's track. The intestate, while passing across the tracks, was struck by a car, which was "shoved" by a switchman so as to close the gap. The court, per Bradley, J. (Dwight, P. J., and Lewis and Haight, JJ., concurring), said:

"In view of such facts, the deceased and his co-employés were not mere volunteers upon the defendant's tracks. Their relation to the work required them to go to and from it, and in doing so they had rights which it was the duty of the defendant to recognize, and, assuming (as we may upon the finding of the jury) that the defendant was advised that the persons engaged in the work of performing the contract were for that purpose passing over its tracks through an opening or at the place in question, the defendant owed to them some duty to use reasonable care for their protection, and that

they should not, while so engaged, suffer injury by its negligence. Indermaur v. Dames, L. R. 2 C. P. 311; Smith v. Docks Co., L. R. 3 C. P. 326; Newson v. Railroad Co., 29 N. Y. 383; Driscoll v. Cement Co., 37 N. Y. 637, 97 Am. Dec. 761; Stinson v. Railroad Co., 32 N. Y. 333, 88 Am. Dec. 332; Murphy v. Railroad Co., 118 N. Y. 527, 23 N. E. 812; Young v. Railroad Co., 30 Barb. 229; McDermott v. Railroad Co., 28 Hun, 325; Goodfellow v. Railroad Co., 106 Mass. 461. * * * It is urged by the learned counsel for the defendant that it was practically impossible to provide for or maintain an opening for the workmen to pass through upon this track, because the defendant was constantly putting cars upon it, and, as they were wanted for use, taking cars from the track, and that in doing so necessarily had to move more or less the cars upon it, and that the deceased must have known that this was being done. While there is much force in the suggestion, founded upon the evidence, the facts before mentioned, which the jury could find, still remain, that the workmen, for the purposes of the business in which they were engaged, were, with the knowledge of the defendant, frequently crossing the track, and the use which was made of the track by the company did not necessarily deny to its servants the opportunity to use such care as was reasonable, under the circumstances, for the protection of those workmen against injury by the movement of its cars."

This case does not seem to have been taken to the court of appeals, although it appears in Silvernail's New York Citations as affirmed in 146 N. Y., at page 290.

In Collins v. Railroad Co., 8 Am. St. Rep. 165, the defendant contracted with one to lay water pipes in its yard, and the intestate, who was in the employ of the contractor, had been spreading dirt between the tracks. While standing in the space between the lines of tracks, he was struck by a car. The court said that the deceased was not a licensee. "He had been, in effect, induced and requested by the defendant to come upon the yard and work in it, for its benefit as well as his own. Cordell v. Railroad Co., 70 N. Y. 119, 26 Am. Rep. 550. As to one so prudent the defendant owed a duty to be ordinarily prudent in the conduct of its business."

In Ominger v. Railroad Co., 4 Hun, 159, the plaintiff, an employé of the contractor with the defendant, while working about the track, was injured by a train of the defendant, and the court, per Learned, P. J., held that the plaintiff was not a mere licensee, but that he was there to fulfill a contract,—a person on lawful business; citing Indermaur v. Dames, supra; Smith v. Docks Co., supra; Coughtry v. Woolen Co., 56 N. Y. 124, 15 Am. Rep. 387.

In Young v. Railroad Co., supra, the plaintiff was in the employ of a contractor for repairing defendant's bridge, and while so engaged was injured by defendant's cars. The court held that if the plaintiff was injured by the negligence of defendant's servants he had a cause of action against the defendant, inasmuch as "he was lawfully there, engaged in the work he was employed to perform." In Indermaur v. Dames, supra, a gas fitter, under contract to fix a gas apparatus on defendant's premises, sent his workman, who fell through an open shaft. The court, per Kelly, C. B., in affirming a judgment recovered by the workman against the defendant, adopted the language of Willes, J., below, who had said: "We think that argument [that the plaintiff was a bare licensee] fails because the capacity in which the plaintiff was there was that of a person on lawful business, in the course of performing a contract in which

both the plaintiff and the defendant had an interest, and not upon bare permission,"—holding that the obligation upon the defendant was the exercise of reasonable care. The learned opinion of Willes, J., though not reported in L. R. 2 C. P., is found in full in Bigelow, Cas. Torts (Student's Series) 482. See, too, Coughtry v. Woolen Co., supra; Goodfellow v. Railroad Co., supra. Thomp. Neg. §§ 1839, 1840, states the rule thus:

"Persons lawfully at work in repairing a railway track, or in repairing a highway where it crosses a railway track, cannot be expected to pursue their labors, and at the same time maintain a constant lookout for an approaching train. They are passive, and are not a source of danger to the train. Those who are driving the train are active, and are handling and in control of the instrument of danger and mischief. The obligation of reasonable care which the law puts upon the railway company under these circumstances, therefore, demands nothing less than an active vigilance in favor of persons thus lawfully at work upon the track, and the giving of seasonable danger signals to arouse their attention and enable them to get out of the way before it is too late. A person employed by one who has entered into a contract with the railroad company to do a job of work upon its road is obviously entitled to this measure of care."

I think that the care required is such care as a man of ordinary experience and prudence would exercise under the circumstances. This is the measure of the obligation as expressed in Indermaur v. Dames, supra, in Murphy v. Railroad Co., supra, and in Stinson v. Railroad Co., supra. In the last case the court say: "And the duty the company owed to him in the management of its trains was the exercise of that ordinary care which every man owes to his neighbor, to do him no injury by negligence while both are engaged in lawful pursuits,—a duty which begins and ends in the maxim, 'Sic utere tuo ut non alienum lædas.'" In Murphy v. Railroad Co., supra, the court, per Haight, J., held that it was the duty of the defendants to use ordinary care and caution to prevent injuries to a car repairer of a connecting railroad corporation, discriminating the obligation from that which lay upon the defendant in Sutton v. Railroad Co., 66 N. Y. 243, towards a mere licensee. See, too, Conlan v. Railroad Co., 74 Hun, 115, 26 N. Y. Supp. 659, affirmed in 148 N. Y. 748, 43 N. E. 986.

The plaintiff's version of the accident may be summarized as follows: Her intestate came from the tower house, and crossed the tracks to his foreman, came back, and stooped down to lift up "something," which lay upon the cross-ties, outside the rails, but near them. At this place there were some protecting bars, used by the switch company, which the intestate was required to adjust,—to bend into shape. He was about to lift up such a bar at the time he stooped over. At this time the locomotive of the defendant, running without a train of cars, approached. The deceased saw it, and attempted to cross to a place of safety, but was too late. The engine was running at a speed of from 15 to 20 miles an hour. There is also testimony that he could not have remained where he stood, and have escaped an engine of the defendant traveling upon the rails, but that his place of safety depended upon his gaining a coign between the rails of the south-bound and of the

north-bound tracks. The version of the defendant is that the intestate was standing or walking towards the engine with his head down, doing nothing, and that he stepped onto the track when the locomotive was so close to him as to make the accident unavoidable, although the locomotive was running at a speed of not more than six miles an hour.

It appears that it was broad daylight, and that the engineer knew that there were persons at work at this place. At the time of the accident he was on the right side of the locomotive cab, but he did not see the intestate until after the accident. He testifies that he could see a mile and a half ahead, that if a man was stooping down picking up something he could see that man 150 feet away; that he could see a man on the left side of the engine (the relative position of the intestate), if stooping down on the track, 20 feet away; and that if he had seen the intestate at this distance he could have stopped the locomotive. He also testifies that the left-hand side of the locomotive cab was the place for the fireman, who is supposed to keep watch on that side, but that at this particular time the fireman had just "got down" from the tender after taking coal. The fireman testifies that he was in the cab on his proper side, but that he "could not say that he was in his proper place"; that he was not looking ahead, for he went to hang up his scoop. He says that it was his duty "to cover the side of the track" where the intestate was injured, and that "in a certain way" he "was doing it at the time." He further says that he was looking ahead before the accident, and that he did not know why he did not see the intestate, and that he could see three miles ahead when he was in position. I think that the question of the due care of the defendant was one for the jury.

If the jury found that the plaintiff's intestate at the time and place of the accident was a workman of the switch company then engaged in work incidental to his employment, I think that the question of his contributory negligence was also for the jury. I have said that there was evidence from which the jury might have inferred that his only escape from collision with the locomotive when he saw it coming was to cross the tracks so as to gain a place between the rails of the north and the south bound tracks, for his alternative was to leap to the ground 45 feet below. His obligation, if he were a workman then and there properly at work, was not that of a traveler about to cross a track. Ominger v. Railroad Co., 4 Hun, 159, citing Barton v. Railroad Co., 1 Thomp. & C. 297; Goodfellow v. Railroad Co., supra. See, too, Noonan v. Railroad Co. (Sup.) 16 N. Y. Supp. 678, affirmed in 131 N. Y. 594, 30 N. E. 67. Thompson, in his Commentaries on the Law of Negligence (section 1839), says:

"Persons lawfully at work repairing a railway track, or in repairing a highway where it crosses a railway track, cannot be expected to pursue their labors, and at the same time maintain a constant lookout for an approaching train. They are passive, and are not a source of danger to the train. Those who are driving the train are active, and are handling and in control of the instrument of danger or mischief."

A motion to direct a verdict for the defendant was reserved, and upon the consideration of it, and of the motion for a new trial on the minutes, the learned justice wrote an elaborate and learned opinion, which expressed misgivings as to the correctness of the charge which he gave to the jury as to the legal obligation of the defendant, in view of Pollitt v. Railroad Co. (Sup.) 10 N. Y. Supp. 691, affirmed in 126 N. Y. 630, 27 N. E. 410, evidently regarding that case as a precedent rather than as an authority. He wrote that under that decision a verdict would have to be directed for the defendant were it not for our decision in De Boer v. Warehouse Co., 51 App. Div. 289, 64 N. Y. Supp. 925. I think that this case is not necessarily determined by Pollitt's Case, examination of the record in which shows that the learned trial justice, Mr. Justice Cullen, dismissed the complaint upon the motion made at the close of the case, on the ground that there was no evidence of negligence on the defendant's part, and on the further ground that there was no evidence to show that plaintiff's intestate was free from contributory negligence. Although Mr. Justice Cullen made no comments on granting the motion, I am sure that the learned counsel for the appellant in that case was entirely correct in his statement upon his brief at the general term that "the nonsuit was granted upon the sole ground that there was no evidence from which the jury could find that at that particular moment the deceased was not negligently upon the track." I think that the record in Pollitt's Case justified such a decision of the trial justice upon the ground of failure in the plaintiff's case to prove by facts or from the drift of the surrounding circumstances that the intestate was free from contributory negligence. True, the general term opinion opens with the proposition that "the defendant owed him [the deceased] no duty, and was under no obligation to regulate the operation of its trains with reference to his presence." But the opinion proceeds in the second paragraph to state that the testimony fails to convict the engineer of "any failure of duty" after the discovery of the deceased upon the track, and then summarizes the testimony in order to warrant this conclusion. In none of the briefs of either counsel, at the general term or at the court of appeals, is the legal question of "no duty" touched upon or discussed, while the affirmance by the court of appeals is without opinion, and not upon the opinion below. Pollitt was a painter in the employ of a bridge company, a contractor with the defendant, which contractor at the time in question was painting the structure below the track and the platform above it, but was not working upon the surface whereon the tracks were laid. There was a scaffolding suspended from the structure. Although it was necessary to go upon the track to place canvas to prevent the paint from dropping, it appeared that the canvas had been placed before the painting was begun and before the plaintiff was hurt. This testimony throws light upon the statement of the learned counsel in his brief at the general term, that Mr. Justice Cullen dismissed the complaint on the ground that there was no evidence from which the jury could find that "at that particular moment" the plaintiff was not negligently upon the track.

In the case at bar there was testimony from which the jury might have found that the plaintiff while upon the surface whereon lay the track was engaged there in work incidental to his employment. It is hard to see why the learned justice who wrote in Pollitt's Case at the general term should say that the defendant owed the deceased "no duty," and then in the next paragraph should discuss whether the testimony failed to convict the engineer of "failure of duty." In view of the disposition of the case at the circuit, is not this apparent inconsistency in the opinion to be explained by concluding that the learned judge meant to say that, as it was not shown that Pollitt's employment did not warrant his presence at the particular moment on the surface of the structure, he could not be regarded as a workman about his business? Or, possibly, the learned justice, when he wrote that the defendant owed the deceased no duty and was under no obligation to regulate the operation of its trains, intended to convey the proposition that the defendant owed to the deceased no duty to regulate the operation of its trains, and was under no obligation to do so, with reference to his presence. I seek neither to strain nor to refine, but, at least, I may strive to reconcile, when an expression of "no duty" is followed immediately by a discussion that assumes that there was a "duty." If, however, the learned general term meant to hold, as a general proposition, that a railroad corporation, whether surface or elevated, in the operation of its locomotives and cars, does not owe some duty beyond that of mere abstention from willful injury to a servant employed by a contractor with such corporation, at the times when the service of that servant requires or justifies his presence upon or near the rails of such corporation, then I think that is not the law. I can see no reason for any discrimination between surface railroads and elevated railroads. I am not discussing the rights of travelers at crossings, or the rights of licensees or trespassers, but of workmen assumed to be lawfully at work upon or perilously near the tracks of a railroad. Indeed, it might be said that, if any distinction were to be made, it would be against the elevated railroad, because the opportunity to avoid danger is less for him at work upon a structure in the air than for his fellow at work upon the surface of the earth. I do not understand the rule to be that an affirmance by the court of appeals without opinion is an affirmance of all the legal propositions stated in the opinion below. As I think that the case at bar does not necessarily turn upon the De Boer Case, inasmuch as the jury in this case were warranted in finding from the evidence that the status of the plaintiff's intestate, at the time and place, was that of an employé of the Union Switch Company, there is no reason for any discussion of that decision; for no request was made to charge the obligation of the defendant to a mere licensee, and no exception was taken to the charge of the learned trial justice, which, I think, fairly stated the law.

The judgment and orders should be affirmed, with costs. All concur.