CHARLES A. WAGNER, Respondent, *v.* THE BROOKLYN HEIGHTS RAILROAD COMPANY, Appellant.

|69  349|
|a174 NY 520|

*Negligence — elevated railroad structure — injury from an electric current to an employee of the city engaged in repairing a broken police telegraph wire attached thereto — liability of the company for a feed wire from which the insulation had worn off — effect of a pass issued to such employee containing an assumption of risk by him.*

In an action to recover damages for personal injuries it appeared that the defendant operated an elevated railroad in the city of New York, and that it maintained on the elevated structure a trolley feed wire, carrying a powerful current of electricity, and that it also permitted the city, upon the payment of rent, to attach its police telegraph wires thereto; that the plaintiff, a lineman in the police department of the city, was sent to repair a broken police telegraph wire, and that while he was at work he was injured by a shock of electricity, which was due to the fact that the insulation on the railroad company's feed wire had been worn away by contact with an iron brace. There was evidence that such contact must have continued for a year before the insulation had worn away, and that the company could have discovered such defect by means of instruments commonly employed for that purpose.

*Held*, that a judgment in favor of the plaintiff should be affirmed;

That the defendant was bound to exercise ordinary care in respect to the plaintiff, and that such care might be found to include the ordinary and reasonable inspection of its wires, such as would preserve the insulation from any impairment that would render the wires dangerous or deadly to those whose business brought them in proximity thereto;

That the fact that the defendant had issued a pass to the plaintiff in the following terms, " You will allow Charles A. Wagner, employed by Police Department, to pass through station and on to structure free of charge, but you will not allow him free transit on trains," which pass contained printed on the reverse side thereof the statement, " The Person receiving this Permit accepts and uses it with the express agreement that he will assume all risk and liability of accident, and in no event hold the Brooklyn Elevated Railroad Company responsible for any injury to person or property however caused," did not preclude the plaintiff from recovering for the injury done to him as the plaintiff and the defendant did not occupy the relation of passenger and common carrier, and for the further reason that the plaintiff did not gain access to the structure by means of the pass, but by climbing upon the structure from the roof of a street surface car.

APPEAL by the defendant, the Brooklyn Heights Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings

on the 10th day of June, 1901, upon the verdict of a jury for $4,500, and also from an order entered in said clerk's office on the 21st day of June, 1901, denying the defendant's motion for a new trial made upon the minutes.

*I. R. Oeland,* and *George D. Yeomans,* for the appellant.

*Isaac M. Kapper,* for the respondent.

JENKS, J. :

The appellant contends, *first,* that the evidence failed to establish a cause of action, and, *second,* that the plaintiff perforce of a pass lost any right of action.

*First.* The plaintiff was a lineman of the police department of the city of New York, of thirteen years' experience in service of the city of Brooklyn and of its said successor. At the time of the accident his duty called him to repair a broken police telegraph wire. This wire was carried on the elevated railroad structure of the defendant, which charged rent to the city for such privilege. While at his work underneath the structure, he was injured by a shock of electricity, which, he contends, had escaped from a trolley feed wire carried upon such structure by the defendant. The negligence imputed is that the defendant suffered such wire to become uninsulated, defective and dangerous, so that the electric current escaped therefrom. In the absence of any provision of restraint in the letting to the city of New York, I think that such privilege would contemplate the right of reasonable access by the city to its wires in order to make any necessary repairs in the maintenance of its lines. Indeed, it appears that it was customary for the city to send its linemen on the structure for such purpose. On the occasion in question the plaintiff had been sent by his superior to repair a break, and his duty required him to go upon the structure. I think, therefore, that the plaintiff was neither a trespasser nor a bare licensee, but an employee of the city lawfully engaged about the business of his master. (*Wells* v. *Brooklyn Heights R. R. Co.,* 67 App. Div. 212, and authorities cited; *Illingsworth* v. *Boston Electric Light Co.,* 161 Mass. 583, 587.) The obligation of the defendant to him certainly was that of ordinary care, which required the exercise of such care both in the stringing and in the

maintenance of its electric wires, regardful of any inherent danger in highly charged electric wires, and mindful that from time to time both its own workmen and those of the city, in the course of their respective duties incident to the maintenance of the wires, might be brought in proximity to the wires or in contact with them.   And such care might be found to include the ordinary and reasonable insulation of such wires, and also such ordinary and reasonable inspection as would preserve such insulation from any impairment that would render the wires dangerous or deadly to those whose business properly brought them within danger.   (*Paine* v. *Electric Illuminating, etc., Co.,* 64 App. Div. 477, and authorities cited ; *Illingsworth* v. *Boston Electric Light Co., supra ; Griffin* v. *United Electric Light Co.,* 164 Mass. 492 ; *Newark Electric Light & Power Co.* v. *Garden,* 6 Am. Elec. Cas. 275 ; *Atlanta Con. St. Ry. Co.* v. *Owings,* 97 Ga. 663.)   The very fact of insulation of such wire was a recognition of its inherent danger.   (*Griffin* v. *United Electric Light Co., supra ; Newark Electric Light & Power Co.* v. *Garden, supra.*)   Of course, it is within common knowledge that a break may occur at any point in a wire line which may require work of repair there, and the defendant cannot be heard to say that it did not anticipate that the workmen of the city might be required to go to the point in question.   There was evidence which warranted the finding that the shock was due to the contact of the insulated feed wire of the defendant with a certain iron brace or support of the structure at a point where the insulating material on that wire had been worn completely away so as to bring the naked wire in touch with the iron support, thereby causing a flow of the electric current into the brace, so that when plaintiff's hand came in contact with the brace the injurious shock entered his body.   There was evidence that warranted the finding that the defective insulation was due to the attrition of the feed wire with the iron brace, and that a year or more of such attrition might elapse before the insulating material would be worn entirely away.   There was also evidence that the defendant might have discovered such defect by practicable, reasonable and available tests through the use of instruments commonly employed for such purpose.   I think, then, that the question whether the defendant had used ordinary care in the premises was for the jury, and that this question and

that of the plaintiff's contributory negligence were properly sub-
mitted to it by Mr. Justice DIOKEY.

*Second.* The contention that the plaintiff, by his stipulation, lost
any right of action is based upon the fact that the defendant issued
to the employees of the city the following card :

" BROOKLYN ELEVATED RAILROAD COMPANY.

" 31 SANDS STREET.

" No. 371.                        " BROOKLYN 12 — 1, 1898.

" All Employes :

" You will allow Charles A. Wagner, employed by Police Depart-
ment, to pass through station and on to structure free of charge, but
you will not allow him free transit on trains.

" This permit expires 12 — 31 — 98.

" J. D. BARTON,

*"General Superintendent."*

The following is printed on the reverse side of this card : " The
Person receiving this Permit accepts and uses it with the express
agreement that he will assume all risk and liability of accident, and
in no event hold the Brooklyn Elevated Railroad Company respon-
sible for any injury to person or property however caused.   It must
be presented to Agent and Gateman upon entering any station, and
also presented upon demand from any employee of this company."
The card was not signed.

This card permitted the plaintiff to pass through the elevated rail-
way station without paying his fare.   The authorities cited by the
learned counsel for the appellant are those which, in this State,
recognize the power of common carriers to contract against their
liability for negligence.   But there was no relation of passenger
and carrier between the parties at the time.   The plaintiff was
upon the structure attending to duties incidental to the business of
his master who, for compensation charged by the defendant, had
obtained from the defendant the right to suspend its own wires on
the structure.   He was not there by virtue of any contract between
him and the defendant as a common carrier or between his master
and the defendant as a common carrier.   Incidental to its business
as a common carrier, the defendant maintained a structure, and, as
owner thereof, it rented this right of support to the master of the

plaintiff.    But the enjoyment of this privilege by the master in no way involved the business of the defendant.    The pass may be regarded as merely a matter of convenience.    It might well be that the defendant could require the employee of the city who, when about his master's business, sought to enter the structure by passage through its passenger gate, to exhibit such card in order to distinguish him from a passenger, but from its very terms it forbids the idea that it was any contract with the defendant as a common carrier.

But in any event, the plaintiff did not gain access by means of this card.    He climbed up onto the structure.    He testified that it was "a common thing to climb up at this point upon the structure by getting on top of a car (street surface car) and going up."    This was the method employed by him to reach the place of the break. And he also testified that he had reached such a place by ascending the iron pillars of the fabric.

No other questions presented require detailed consideration, and the judgment and order should be affirmed, with costs.

All concurred, except WOODWARD, J., dissenting.

Judgment and order affirmed, with costs.