OLIVIA B. DOWNS, Appellant, v. LEWIS P. ANDREWS, Receiver of the Sedalia Water & Light Company, and Missouri & Kansas Telephone Company, Respondent.

Kansas City Court of Appeals, June 28, 1910.

1. **NEGLIGENCE: Duty.** Negligence is based on duty and where the defendant does not owe a duty to the injured party, he cannot be guilty of negligence as to him.

2. ———: ———: ———: **Licensee.** The occupant of premises, or one in possession of property, is not in duty bound to use ordinary care in protecting a bare licensee from injury. He is only made liable for a wilful injury.

3. ———: ———: ———: **Invitees.** If two or more owners of property, situated near together, mutually permit the servants of each to enter the property of the other to make repairs on his own, such servants are more than licensees. They are invitees upon a consideration and a duty of care not to injure them arises.

4. ———: ———: ———: ———: **Master and Servant: Telephone and Light Companies.** Two telephone companies and an electric light company had poles and wires on the same street. The wires of one telephone company and those of the light company were strung on the same poles. The wires of the other telephone company were strung on its own poles and ran under those of the two other companies. There was an understanding between the three that the servants of each might climb the poles of each to put their lines in order. The telephone company whose wires were strung on its own poles

sent out an employee to discover the trouble with its lines. He saw the line of the other telephone company sagged down on the line of his company, but did not see that further on the line of the other telephone company was in contact with the wire of the light company, the latter being charged with a deadly current of electricity, and neither of them insulated. He climbed the pole of the light company to raise the line of the other telephone company off of his wire. When he took hold for that purpose he was immediately killed. *Held*: That he was an invitee, for a consideration, in using the pole, and that the other telephone company and the light company were liable for his death.

5. **PRACTICE:** Petition: Opening Statement: Demurrer. If a petition does not state sufficient facts for a cause of action, but no demurrer is filed and the opening statement of facts by plaintiff's counsel to the jury, added to those stated in the petition, would constitute a cause of action if put in the petition by amendment, and defendant objects to receiving any evidence for the reason that the petition and opening statement together do not state a case, and so present the case on appeal, the appellate court will treat the case as presented by counsel and consider the opening statement as a part of the petition in passing upon the question whether the cause should be remanded for trial on account of error in refusing to hear any evidence.

Appeal from Pettis Circuit Court.—*Hon. Louis Hoffman*, Judge.

REVERSED AND REMANDED.

*C. C. Lawson* and *Sangree & Bohling* for appellant.

(1)  The court erred in sustaining the objection of the defendants to the introduction of evidence, under the petition and the opening statement of counsel for plaintiff. The petition states a cause of action. Geismann v. Missouri, etc., Co., 173 Mo. 654; Winkleman v. K. C., etc., Co., 110 Mo. App. 184; Harrison v. K. C., etc., Co., 195 Mo. 606; Newark, etc., Co. v. Garden, 78 Fed. 74; Ellingsworth v. Electric Co., 161 Mass. 583; Stevens v. United, etc., Co., 73 N. H. 159; Standard, etc., Co. v. Muncey, 76 S. W. 931; Griffin v. Electric Light Co., 164 Mass. 492.  (2)  If the petition

states facts sufficient to sustain a judgment, then it is error in the court to sustain an objection to the introduction of evidence under such petition. Donaldson v. Butler County, 98 Mo. 163; Marshall v. Ferguson, 78 Mo. App. 645; Jones v. Philadelphia Underwriters, 78 Mo. App. 296; Kansas City v. American Surety Co., 71 Mo. App. 315; Delaney v. Bowman, 82 Mo. App. 645; Ricketts v. Hart, 73 Mo. App. 647.

*John H. Bothwell* and *Charles E. Yeater* for respondent Lewis P. Andrews, Receiver.

(1)  There was no necessity for deceased to climb the receiver's pole where the petition alleges he took hold of the wire of the other telephone company in contact with the receiver's wire, and in so doing he acted without permission or necessity, and was a trespasser to whom the receiver owed no duty. Barney v. Railroad, 126 Mo. 389; Schmidt v. Distilling Co., 90 Mo. 284; Smith v. Packing Co., 82 Mo. App. 9; Straub v. Soderer, 53 Mo. 43; Hbuk v. Railroad, 116 Mo. App. 559. (2) The receiver's liability even if deceased was rightfully on his pole, could be based only on the fact that it knew, or ought to have known, of the dangerous condition of the wires, which could only be obtained through the observation of one of his linemen. Consequently, if such knowledge was discoverable by the receiver's lineman, it was equally evident to the deceased, who either knew it, and took the risk, or ought to have known it, and in either event was guilty of contributory negligence, patent on the face of the petition, which precludes a recovery. Roberts v. Tel. Co., 166 Mo. 382; Junior v. El. & Power Co., 127 Mo. 83; Epperson v. Postal Tel. Cable Co., 155 Mo. 347; Steinhauser v. Spraul, 127 Mo. 562; Fulger v. Bothe, 117 Mo. 485; Lucy v. Oil Co., 129 Mo. 39. (3)  As against the receiver, the plaintiff omitted the material and essential allegation that it was necessary for the deceased to climb the receiver's pole, and

that omission, together with the other allegations of the petition showing that it was on the contrary absolutely unnecessary to climb the receiver's pole, and that the alleged defects were plainly obvious to him, made the deceased a trespasser, who voluntarily assumed the risk without due caution, and a judgment for plaintiff would not have been good after verdict against the receiver, and would have been subject to arrest. Birge v. Bock, 24 Mo. App. 337; Jones v. Philadelphia Underwriters, etc., 78 Mo. App. 296; Frazier v. Roberts, 32 Mo. 457; Cagle v. Insurance Co., 78 Mo. App. 434; Deland v. Van Stone, 26 Mo. App. 299; State to use of v. Bacon, 24 Mo. App. 403; Mueller v. Shoe Co., 109 Mo. App. 511; McManamee v. Railroad, 135 Mo. 447; Shaver v. Insurance Co., 79 Mo. App. 424.

*Gleed, Hunt, Palmer & Gleed* and *George F. Longan* for respondent Missouri & Kansas Telephone Company.

(1) The burden was upon plaintiff to so plead the facts as to show a duty on the part of defendant to plaintiff, and that no such duty will be presumed which does not arise directly and distinctly from the facts pleaded. Cooke v. Putnam County, 70 Mo. 668; State ex rel. v. Martin, 77 Mo. 670; Verdin v. City, 131 Mo. 26. (2) Where no duty is owing there is no liability. Witte v. Stifel, 126 Mo. 295.

ELLISON, J.—Plaintiff's husband was in the employ of the Queen City Telephone Company, at Sedalia, Mo., and while engaged in putting one of its lines in order he was killed by an electric shock caused, as she alleges, by the negligence of the two defendants. At the opening of the trial plaintiff's counsel made a statement of her case to the jury and thereupon at the offer of evidence in her behalf, defendants objected to receiving any, on the ground that the petition in connec-

Downs v. Andrews.

tion with the statement did not show a cause of action. The objection was sustained and plaintiff took a nonsuit with leave, and failing to have it set aside and a new trial granted, appealed.

It will be observed that the deceased, an employee of one telephone company, is charged to have been killed by reason of the negligence of another telephone company and an electric light company. The two are made joint defendants, the latter is in the hands of a receiver and the complaint is formally against him, but we shall use the name of the company. The facts stated are that the three companies had poles and wires at and near the corner of a street in Sedalia. The wires of the deceased's employer, the Queen City Company, were on its own poles, but the wires of the two defendants, at and near that corner, were both on the poles of the Electric Light Company. The wires of the Queen City Company ran under the wires of the defendants; and the wire of the defendant Telephone Company, through its negligence, had sagged down so as to come in contact with and rest upon the wire of the Queen City Telephone Company. The wires of the two defendants, through the negligence of each, had come in contact with each other at a point about two hundred yards distant from the pole at the corner. The wires of the defendant, the Electric Light Company, though used to convey electricity for lighting purposes, were only ordinary telephone wires and they were charged in deadly voltage. The wires of the three companies were thus connected; that is, the wires of the defendant, the Electric Light Company, and of the defendant Telephone Company, were connected at a point about two hundred yards from the pole at the corner and the wires of the latter company were connected with the wires of the Queen City Company. Neither of the wires of the defendant companies was insulated and thus the high voltage in the Electric

145 App—12

Light Company's wire was transferred into the wires of the defendant Telephone Company.

The deceased was what was known as the "trouble man" for the Queen City Company and it had been reported to that company by one of its patrons that something was wrong with his phone, in that there was a confusing noise when he ·used it. The deceased was sent out to locate the trouble. He discovered that the defendant, the Telephone Company's wire had dropped or sagged down until it was in contact with the Queen City wire and he climbed the pole of the Electric Light Company at the corner for the purpose of lifting the defendant Telephone Company's wire off of that of his company. When he reached the cross arm he took hold of the defendant Telephone Company's wire to pull it up so as to take out the slack. As he did so, he was immediately killed.

The defense is based on the assertion that the petition and opening statement of plaintiff's attorney showed that deceased climbed the pole by mere permission, as a bare licensee, from which it follows that defendants owed him no duty, save to refrain from willfully injuring him. It is true that negligence is bottomed on a violation of duty and that where no duty is owing there cannot be liability for negligence. [Witte v. Stifel, 126 Mo. 295, 300; Cumberland Tel. & Tel. Co. v. Martin, 116 Ky. 554, 558.]

But is that the proper interpretation of the petition and opening statement? We must take the act of the deceased as we would that of the company whose servant he was. It, in effect, is alleged that as the three companies had lines near together at that corner and that as the lines of either might get out of order, it was mutually agreed that either company could use the poles of the other in restoring the lines to their proper condition or place. Thus, the deceased, as the servant of the Queen City Company was much more than a licensee merely indulged with a permission; he was invited to

use the pole and became possessed of a right; and therefore a duty of care by defendants not to endanger his safety, arose in his favor.   Where there is mutuality of interest to be subserved by mutual invitations to occupy the other's premises, a duty arises, "although the particular thing which is the object of the visit may not be for the benefit of the occupant." [Plummer v. Dill, 156 Mass. 426.]   The case of Illingsworth v. Boston Electric Light Co., 161 Mass. 583, may well be likened to the one at bar.   The plaintiff in that case was in the employ of the city of Boston as a lineman in the fire alarm department.   There was evidence showing that the city and the defendant electric light company jointly maintained a frame for their wires on a certain building, and the court said:  "The question, then, is, when two business corporations or two persons, under some agreement between themselves, use the same structures, owned by one of them, as supports for separate lines of wire used by each for the transmission of dangerous currents of electricity, what is the duty, at common law, which each owes to the other in regard to the care each must take to have its wires in a reasonably safe condition at or near the structures where the servants of the other have occasion to go in the usual course of business, and where they must come near to, or in contact with, the wires?   Such servants, when so employed, are more than mere licensees, taking advantage, for their own benefit, or that of their employer, of the passive acquiescence of the licensor.   If they are licensees at all, the license, until it is revoked, is coupled with an interest.   The two corporations or persons have, in a sense, a common interest in the maintenance and use of the structures to which the wires of each are attached; and each, we think, should be under the same obligation to the other as persons having common rights in a place or passageway are under to one another, not negligently to place a dangerous substance on the common territory, where it reason-

ably may be anticipated that others, having common rights, may be injured by it."

A case arose in the Federal Circuit Court for the district of New Jersey, which in the similarity of facts and likeness of principle is applicable here. The syllabus reads as follows: "An electric light company, which maintains wires carrying an electric current of high power on poles used, in common with it, by other companies for the support of their wires, owes to an employee of one of such other companies, who is lawfully upon the pole, in pursuance of the common right, the duty of exercising ordinary care to keep its wires so safely insulated as to prevent injury to such employee, . . ." [Newark Electric Light & Power Co. v. Garden, 78 Fed. Rep. 74.]

The defendant Telephone Company insists that conceding the petition and opening statement showed a mutual understanding that each could use the pole at the corner, it did not show that the Queen City Company could handle the wires of the other companies. The petition and statement are not as full as they should be. The petition would have been better if it had been clearer and more definite in its allegations on this subject. It perhaps would have been subject to criticism if attacked by a demurrer before trial. But instead of that practice being followed, defendants adopted the plan, tolerated but frowned upon by the courts, of waiting until the trial began and then objecting to any evidence. In such mode of attack every intendment is taken in favor of the petition. So when we take the petition and statement together, as counsel have done, we believe it should be said that by fair intendment it is alleged that the permission to climb the pole for the purpose of rectifying trouble on the line, it was meant by such permission that one line might be raised off of another on which it was hanging. In this view the cases cited us by defendants are not applicable.

We note the special points suggested by counsel for the Electric Light Company. They chiefly refer to matters that relate to the plan of action adopted by deceased to remedy the trouble with the wires and to his contributory negligence. We do not think the petition and opening statement show such state of facts, or such line of conduct as would permit a declaration that deceased was guilty of negligence as a matter of law.

While the case before us has some peculiar facts, not found in the cases cited by us, yet the principle announced in them is decisive of this case. The facts charged meet and overcome every objection advanced by defendants, and we hold that if evidence can be had by the plaintiff tending substantially to prove the facts alleged, she is entitled to have them submitted to a jury.

We have not thought it necessary to set out in detail all the allegations of the petition and the opening statement showing culpability on the part of defendants. We will, however, remark that we have considered the case in the manner we have, by reason of the way in which it was treated in the trial court and presented in this court. That is to say, defendants' counsel have connected the petition with the opening statement of plaintiff's counsel to the jury, and affirmed that taken together they did not show a cause of action. The petition, alone, is defective in a vital particular. It does not charge that there was a mutual permission, agreement or understanding between the three companies that each might go up the other's poles to put their lines in order. It charges merely a permission by defendants to the Queen City Company for the latter's servants to use their poles. But in the opening statement of counsel it was said that all three had used the pole and that "in fact it was a custom on the part of all the companies to use each other's poles to rectify trouble that would come about." Piecing out the petition with the opening statement, as counsel them-

selves have done, we think that it would have supported a judgment. It would, however, be far better, as already intimated, that the petition itself be made right by amendment charging the mutual permission, agreement or understanding. The course taken by defendants' counsel was doubtless on the idea that if the points of objection were made to the petition alone, they could be met by an amendment, and therefore it would be as well to treat the petition as though it also contained the matters asserted in the opening statement.

The judgment is reversed and the cause remanded. All concur.