ALBERT M. OLM, Appellant, *v.* NEW YORK AND QUEENS ELECTRIC LIGHT AND POWER COMPANY, Respondent.

Second Department, May 16, 1919.

Negligence — injury to trimmer of trees in department of parks by breaking of limb which had been burned by defendant's electric cable — erroneous nonsuit — questions as to defendant's negligence and plaintiff's contributory negligence were for the jury — assumption of risk — failure of plaintiff to use life belt.

Where in an action by a trimmer of trees in the department of parks, it appears that the plaintiff, who had been ordered to trim a certain tree, was injured by the breaking of a limb upon which he was standing; that said limb had been burned from the upper side for three-quarters of its diameter by the cable of the defendant, an electric light company; that the insulation of said cable was impaired, and that the defendant knew that the park department was engaged openly and notoriously in trimming trees, including the one in question, it was error to grant a nonsuit.

It was a question for the jury whether in due prudence the defendant should have realized that the impairment of a limb by an imperfect cable might be dangerous to a trimmer who in his work might use the limb in reliance upon its normal strength, and without discovery of such impairment.

It is not essential that the defendant should have foreseen the particular consequences of its omission or commission with respect to the insulation of the cable.

As the plaintiff was not the servant of the defendant, it cannot be said that he took the risk unless he knew the dangerous condition of the limb and went to stand upon it voluntarily.

Contributory negligence of the plaintiff as a matter of law in failing to use a life belt or life line was not established, for such use was not shown to be proper or customary in such work.

APPEAL by the plaintiff, Albert M. Olm, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Queens on the 10th day of January, 1918, upon a dismissal of the complaint by direction of the court at the close of plaintiff's case.

*Theodore H. Lord [Frank X. Sullivan* and *Peter M. Daly* with him on the brief], for the appellant.

*William Rasquin, Jr. [Chauncey B. Garver* with him on the brief], for the respondent.

JENKS, P. J.:

The plaintiff was a trimmer of trees in the department of parks, that ordered him to trim a tree within its jurisdiction. He climbed by a ladder, and then by a limb to another limb, where he stood to saw off a dead branch overhead. Soon after he had begun this work the limb broke and he was thrown to earth.

The plaintiff's theory is that this limb, about six or eight inches thick, had been burned for three-quarters of its diameter by the cable of the defendant, an electric lighting company. The cable had been maintained for some years and was strung three or four inches above the limb. It carried for twelve hours of each day, during the lighting period, a current of 4,700 volts. Very soon after the casualty the insulation of the cable was seen to be impaired or stripped off at a natural point of contact of the cable with the scar of the burn upon the limb. There was expert testimony that the limb was naturally sound and ·normally capable of bearing the weight of ten men or more. There was proof that the ·park department did this work of trimming and pruning such trees openly and notoriously through the year; that the defendant knew of this work and knew that in the doing of it the trimmers went in and about the trees. The casualty occurred soon after 8:30 A. M. of a February day, when the cable was not carrying any current.

After the plaintiff had adduced this evidence, he rested. The court dismissed him, on a motion made on various grounds. The court did not state the reason for dismissal.

The defendant's obligation included the affirmative duty of exercising due care to maintain proper insulation of its cable so that it should not become dangerous. Such care included continuous adequate inspection of the insulation to prevent its decay or impairment. (*Braun* v. *Buffalo General Electric Co.*, 200 N. Y. 484; *Wagner* v. *Brooklyn Heights R. R. Co.*, 69 App. Div. 349, 351; affd., 174 N. Y. 520; *Illingsworth* v. *Boston Electric Light Co.*, 161 Mass. 583.)

The principal question is whether this obligation of the defendant extended to the casualty. The plaintiff was not upon the premises, so to speak, of the defendant, but upon those of his employer. The defendant had strung its cable, by permission, close to those premises. Its obligation of due care contemplated the lawful use of the premises by the owner thereof, and the defendant could be regarded as bound to foresee that persons might lawfully climb into that tree. (Curtis's Law of Electricity, § 512.) Thus in *McCrea* v. *Beverly Gas & Electric Co.* (216 Mass. 495) the court declares that the necessity of men climbing trees to do the required work on moths is well known. In the case at bar, as I have said, there was evidence that the park department was engaged openly and notoriously throughout the year in trimming these trees, that the defendant knew of that work and that in doing it the trimmers went in and about the trees. The fact that the defendant had insulated this cable at this point was a recognition of its inherent danger. (*Wagner* v. *Brooklyn Heights R. R. Co.*, 69 App. Div. 349, 351, and cases cited; affd., 174 N. Y. 520.) Here was a tree at least forty feet in height. I think that the jury could infer that one danger guarded against by insulation of the cable was that of firing this limb and others near the cable. And I think that, in view of the character of trimming work, and of the knowledge of defendant that such work was constantly doing in and about the trees and that the trimmers went in and about the trees, it was a question for the jury whether in due prudence the defendant should have realized that the impairment of a limb by imperfect cable might be dangerous to a trimmer who in his work might use the limb as support or standpoint in reliance of its normal strength and without discovery of such impairment. (See *Braun* v. *Buffalo General Electric Co.*,

*supra.*) The test to be applied to the defendant in this particular was whether a person of ordinary intelligence, "fully acquainted with all of the circumstances," may have foreseen such conduct.

EARL, J., for the court in *Ehrgott* v. *Mayor, etc.* (96 N. Y. 281), says: "The best statement of the rule is that a wrong-doer is responsible for the natural and proximate consequences of his misconduct; and what are such consequences must generally be left for the determination of the jury. (*Milwaukee· & St. P. R. Co.* v.. *Kellogg,* 94 U. S. 469.)" (See, too, *Lowery* v. *Manhattan Railway Co.,* 99 N. Y. 158; S. & R. Neg. [6th ed., Street's] § 29.) It is not essential that the defendant should have foreseen the particular consequences of its omission or commission with respect to the insulation of the cable. (*Lilly* v. *N. Y. C. & H. R. R. R. Co.,* 107 N. Y. 566, 575.) The defective insulation could be determined the proximate cause, as there was no evidence of any independent cause nearer than the defective insulation, or of any outside agency that broke the sequence from defective insulation to the breaking of the limb. (See *Insurance Co. .v. Boon,* 95 U. S. 117, 130; *Horning* v. *Hudson River Telephone Co.,* 111 App. Div. 122, 129; affd., ·186 N. Y. 552.)

I think the plaintiff should not have been dismissed at that stage of the case for his own conduct. He was not the servant of the defendant, and hence it could not be said that he took the risk, unless he knew the dangerous condition of the limb and went to stand upon it voluntarily. (*Illingsworth* v. *Boston Electric Light Co.,* 161 Mass. 583, 588.) The evidence did not indicate that the method of plaintiff to remove this dead branch was essentially improper, or that there was another usual method that would not have required him to take his stand upon this limb. The plaintiff testified that he made preliminary inspection of the tree and found it sound; that after he had climbed into the tree near enough to touch the limb on which he afterwards stood, and which was then above his head, he examined it, tried it by pulling it down with his weight upon it, and that it appeared normal, sound and strong. There was evidence that he thus made the usual inspection. It could be inferred that he did not, during this period of test, see the burn, for

the reason that the burn had been made from the top down-wards. The evidence did not establish contributory negligence as matter of law for failure to use life belt or life line, for such use was not shown to be proper or customary in such work. Indeed, plaintiff was not permitted to testify that such apparatus would have been impracticable in this instance. And generally the question of his lack of due care,— whether in the nature of shortcoming in precautions or imprudence in actions,— under such circumstances as should have been perceived by a man of ordinary intelligence, was for the jury.

I think that the nonsuit was wrong and that a new trial should be granted; with costs to abide the event. I express no opinion, and I intend no intimation, as to the ultimate liability of the defendant.

RICH, PUTNAM, BLACKMAR and JAYCOX, JJ., concurred.

Judgment reversed and new trial granted, costs to abide the event.