## WAGNER v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department.   February 21, 1902.)

1. ELEVATED RAILROADS—ACTION FOR INJURY—TELEGRAPH LINEMAN—RIGHT
TO GO UPON ELEVATED STRUCTURE.

Plaintiff, an experienced lineman of the New York police department, was injured while in discharge of his duty in repairing a police telegraph wire which was carried upon the structure of defendant elevated railroad company, which charged the city rent for the privilege of stringing such wires upon its structure. Plaintiff alleged that the injury was caused by a shock from a current of electricity escaping from defendant's trolley feed wire by reason of defendant's negligence in allowing such wire to become uninsulated and defective. *Held* that, in the absence of any provision of restraint in the contract giving the city a right to string its police wires on defendant's structure, such privilege would contemplate the right of reasonable access by the city to its wires for repairing and maintaining them, and hence plaintiff was not a trespasser or a bare licensee, but one lawfully upon the structure, engaged in the business of his employer.

2. SAME—OBLIGATION OF RAILROAD COMPANY TO THOSE RIGHTFULLY UPON ITS
STRUCTURE—ELECTRIC FEED WIRES.

The obligation of defendant was that of ordinary care, which required the exercise of such care both in stringing and in maintaining its electric wires, regardful of any inherent danger in them when highly charged, and mindful that from time to time the workmen of the city, in discharge of their duties, might be brought in proximity to or contact with them.

3. SAME—INSULATION AND REPAIR.

The care which defendant was bound to exercise included ordinary and reasonable insulation of its wires, and also such ordinary and reasonable inspection as would preserve such insulation from such impairment as would render the wires dangerous to those whose business might bring them in contact with them.

4. SAME—PRESUMPTION FROM INSULATION.

The fact that the wire, the defect in which was alleged to have caused the injury, was insulated, was a recognition of its inherent danger.

5. SAME—EVIDENCE—ORDINARY CARE—JURY QUESTION.

There being evidence which warranted a finding that the shock was due to the contact of defendant's insulated feed wire with an iron brace of the structure at a point where the insulation of the wire had been completely worn away, so that when plaintiff's hand came in contact with the iron brace the current from the wire was conducted through the brace into his body, and also evidence warranting a finding that the defective insulation was due to the attrition of the feed wire with the iron brace, and that a year or more of such attrition might elapse before the insulation would be worn entirely away, and that defendant might have discovered the defect by reasonable, practical, and available tests, by use of instruments commonly employed for the purpose, the question whether defendant had used ordinary care in the premises was properly submitted to the jury.

6. SAME—CONTRACT AGAINST NEGLIGENCE—PASS.

The fact that plaintiff held a pass issued to him by defendant, entitling him to free passage through its stations and upon its structure, but not to free transit upon its trains, upon condition that he would assume all risk and liability of accident while using it, did not debar plaintiff from recovery, since, there being no relation of passenger and carrier between the parties, the rule as to contracting against negligence when such relation did exist was not applicable, especially in view of

the fact that he gained access to the structure by climbing, and not by availing himself of the permission conferred by his pass.

Woodward, J., dissenting.

Appeal from trial term, Kings county.

Action by Charles A. Wagner against the Brooklyn Heights Railroad Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

I. R. Oeland, for appellant.

Isaac M. Kapper, for respondent.

JENKS, J. The appellant contends—First, that the evidence failed to establish a cause of action; and, second, that the plaintiff, perforce of a pass, lost any right of action.

1. The plaintiff was a lineman of the police department of the city of New York, of 13 years' experience in service of the city of Brooklyn and of its said successor. At the time of the accident his duty called him to repair a broken police telegraph wire. This wire was carried on the elevated railroad structure of the defendant, which charged rent to the city for such privilege. While at his work underneath the structure, he was injured by a shock of electricity, which he contends had escaped from a trolley feed wire carried upon such structure by the defendant. The negligence imputed is that the defendant suffered such wire to become uninsulated, defective, and dangerous, so that the electric current escaped therefrom. In the absence of any provision of restraint in the letting to the city of New York, I think that such privilege would contemplate the right of reasonable access by the city to its wires in order to make any necessary repairs in the maintenance of its lines. Indeed, it appears that it was customary for the city to send its lineman on the structure for such purpose. On the occasion in question the plaintiff had been sent by his superior to repair a break, and his duty required him to go upon the structure. I think, therefore, that the plaintiff was neither a trespasser nor a bare licensee, but an employé of the city, lawfully engaged about the business of his master. Wells v. Railroad Co. (Sup.) 14 N. Y. Supp. 196, and authorities cited; Illingsworth v. Light Co., 161 Mass. 583, 587, 37 N. E. 778, 25 L. R. A. 552. The obligation of the defendant to him certainly was that of ordinary care, which required the exercise of such care both in the stringing and in the maintenance of its electric wires, regardful of any inherent danger in highly-charged electric wires, and mindful that from time to time both its own workmen and those of the city, in the course of their respective duties incident to the maintenance of the wires, might be brought in proximity to the wires, or in contact with them. And such care might be found to include the ordinary and reasonable insulation of such wires, and also such ordinary and reasonable inspection as would preserve such insulation from any impairment that would render the wires dangerous or deadly to those whose business properly brought them within danger. Paine v. Power Co., 64 App.

Div. 477, 72 N. Y. Supp. 279, and authorities cited; Illingsworth v. Light Co., supra; Griffin v. Light Co., 164 Mass. 492, 41 N. E. 675, 32 L. R. A. 400, 49 Am. St. Rep. 477; Power Co. v. Garden, 23 C. C. A. 649, 78 Fed. 74, 37 L. R. A. 725; Railway Co. v. Owings, 97 Ga. 663, 25 S. E. 377, 33 L. R. A. 798. The very fact of insulation of such wire was a recognition of its inherent danger. Griffin v. Light Co., supra; Power Co. v. Garden, supra. Of course, it is within common knowledge that a break may occur at any point in a wire line, which may require work of repair there, and the defendant cannot be heard to say that it did not anticipate that the workmen of the city might be required to go to the point in question. There was evidence which warranted the finding that the shock was due to the contact of the insulated feed wire of the defendant with a certain iron brace or support of the structure at a point where the insulating material on that wire had been worn completely away, so as to bring the naked wire in touch with the iron support, thereby causing a flow of the electric current into the brace, so that when plaintiff's hand came in contact with the brace the injurious shock entered his body. There was evidence that warranted the finding that the defective insulation was due to the attrition of the feed wire with the iron brace, and that a year or more of such attrition might elapse before the insulating material would be worn entirely away. There was also evidence that the defendant might have discovered such defect by practicable, reasonable, and available tests, through the use of instruments commonly employed for such purpose. I think, then, that the question whether the defendant had used ordinary care in the premises was for the jury, and that this question and that of the plaintiff's contributory negligence were properly submitted to it by Mr. Justice Dickey.

2. The contention that the plaintiff by his stipulation lost any right of action is based upon the fact that the defendant issued to the employés of the city the following card:

"Brooklyn Elevated Railroad Company, 31 Sands Street.

"Brooklyn, 12—1, 1898.

"No. 371.

"All Employés: You will allow Charles A. Wagner, employed by police department, to pass through station and onto structure free of charge, but you will not allow him free transit on trains. This permit expires 12—31—'98.

"J. D. Barton, General Superintendent."

The following is printed on the reverse side of this card:

"The person receiving this permit accepts and uses it with the express agreement that he will assume all risk and liability of accident, and in no event hold the Brooklyn Elevated Railroad Company responsible for any injury to person or property, however caused. It must be presented to agent and gateman upon entering any station, and also presented upon demand from any employé of this company."

The card was not signed.

This card permitted the plaintiff to pass through the elevated railway station without paying his fare. The authorities cited by the learned counsel for the appellant are those which, in this state, recognize the power of common carriers to contract against their

liability for negligence. But there was no relation of passenger and carrier between the parties at the time. The plaintiff was upon the structure, attending to duties incidental to the business of his master, who, for compensation charged by the defendant, had obtained from the defendant the right to suspend its own wires on the structure. He was not there by virtue of any contract between him and the defendant as a common carrier, or between his master and the defendant as a common carrier. Incidental to its business as a common carrier, the defendant maintained a structure; and, as owner thereof, it rented this right of support to the master of the plaintiff. But the enjoyment of this privilege by the master in no way involved the business of the defendant. The pass may be regarded as merely a matter of convenience. It might well be that the defendant could require the employé of the city, who, when about his master's business, sought to enter the structure by passage through its passenger gate, to exhibit such card, in order to distinguish him from a passenger; but, from its very terms, it forbids the idea that it was any contract with the defendant as a common carrier. But, in any event, the plaintiff did not gain access by means of this card. He climbed up on to the structure. He testified that it was "a common thing to climb up at this point upon the structure, by getting on top of a car [street surface car] and going up." This was the method employed by him to reach the place of the break. And he also testified that he had reached such a place by ascending the iron pillars of the fabric.

No other questions presented require detailed consideration, and the judgment and order should be affirmed, with costs. All concur, except WOODWARD, J., who dissents.