L. B. GODBEY, Appellee, v. GRINNELL ELECTRIC & HEATING COMPANY, Appellant.

**NEGLIGENCE: Proximate Cause—Uninsulated Electric Wire.** Evidence reviewed, and held ample to justify the jury in finding that the breaking and falling of a telephone wire (over which defendant had no control) upon defendant's uninsulated electric light wire, and the conducting of a heavy current of electricity to the ground from defendant's wire and into the body of defendant, constituted a continuous succession of events so connected as to constitute the proximate cause of plaintiff's injury.

**NEGLIGENCE: Proximate Cause—Independent Intervening Cause.** Instructions relative to what independent intervening causes will relieve a defendant from liability reviewed, and held nonprejudicial to defendant.

**NEW TRIAL: Verdict—Excessiveness.** Verdict for $10,000 for per-
3  sonal injuries reviewed, and held excessive, and reduced to $6,500.

*Appeal from Grinnell Superior Court.*—P. G. NORRIS, Judge.

FEBRUARY 10, 1921.

ACTION at law to recover damages for personal injury. Ver-
dict and judgment for plaintiff, and defendant appeals.—*Af-
firmed on condition.*

*Carr, Carr & Evans,* for appellant.

*J. H. Patton,* for appellee.

WEAVER, J.—The defendant is proprietor of an electric
light plant at Grinnell, Iowa, and plaintiff is a resident of the
same city. One of the wires of the electric lighting system is
suspended on poles in the immediate vicinity of plaintiff's home.
On the same poles, and above this wire, are carried several tele-
phone wires. Plaintiff's residence has service connection with
both systems. It is the theory of the plaintiff's case that de-
fendant negligently maintained said wire without proper insu-
lation or other protection against contact with other wires in
that vicinity; that, by some means unknown, a telephone wire
became broken, and one of the strands fell or lay across the
electric light wire at a point where the latter was not insulated,
and the lower end of it lay upon the lawn of the plaintiff's
residence. Plaintiff alleges that, in walking over the lawn, he
discovered what appeared to be a piece of wire lying in the
grass, and, not knowing that it had any connection with the elec-
tric light wires, he attempted to pick it up and throw it from his
premises; and that in so doing he received a severe electric
shock, which knocked him down and rendered him temporarily
helpless. The wire so picked up proved to be the lower end of
the broken strand above described. Later in the day, he went
to his place of employment, and for several days continued at his
work, though with difficulty, but soon had to quit, and cease
all work. For a period of 18 weeks, he was very sick from some
abnormal condition of the heart, with various complications.

At the time of the trial below, a year and a half later, he was still in a disabled condition, and the evidence was such that the jury could find that his disability was of a permanent character. There was other testimony of an expert character, tending to show that his injury and disability were the result of the alleged shock received by him, as above stated; and because thereof and of the alleged negligence of the defendant, he demanded compensation in damages.

The defendant's answer to the claim thus stated is a simple denial of all allegations of the petition.

Plaintiff's evidence tended to show the truth of the material allegations set forth in his pleading: the location of the wires; the defective insulation of the electric light wire; the broken telephone wire lying upon an uninsulated portion of the light wire and extending thence into the plaintiff's yard; his discovery of it; his failure to observe its connection with the light wire; his attempt to pick up the broken strand, and an immediate shock therefrom, which served to prostrate him for the time being; his reasonably good condition of health prior to said occurrence; and his sick and disabled condition following such experience. His testimony as to his condition before and after his injury is corroborated by the members of his family and by his family physician. For the defense, there was evidence tending to prove that plaintiff was not a man of rugged health, prior to his alleged shock; but none of these witnesses show any very intimate knowledge of the fact, and none of them testify as experts, or as having personal knowledge of his condition, either before or after his alleged injury, except as a matter of casual observation.

The fact of the imperfect condition of the insulation of the light wire is shown without material contradiction. It is admitted that, at the time in question, the primary wires of the defendant's lighting system were carrying about 2,200 volts of electricity, and the service wires about 110 volts; and that the wire alleged to have been imperfectly insulated was in use on the day of plaintiff's alleged injury. The defendant's witnesses express a doubt whether the broken telephone wire, in the condition described by the plaintiff, would transmit a current of sufficient strength or power to seriously injure a person. All

admit that a person picking up the wire under such circumstances might receive a slight shock; but, in their opinion as experts, they think the current would have been grounded, or nearly so, between the end which plaintiff took hold of and the point of contact between that wire and the electric wire.

The day was rainy and the ground wet, and in regard to these conditions defendant's lineman says:

"I don't see how he could have been knocked down by the electric current in that telephone wire. The fact that the ground was wet would make a difference; it would not increase the chances of receiving a greater shock in this case, the way it was, as the wire grounded before he got it; it would otherwise increase the chances of receiving a greater shock, but not in any great strength. I have made tests along that line, and say that a wet ground, water present, would increase the flow of electricity through the body of a person standing on the ground coming into contact with an electric light wire, if they get it outright; but if it is laying on the ground, they do not."

The testimony further tended to show that the broken wire picked up by the plaintiff was carrying no electric current from the telephone plant, as the strand so taken hold of by him was on the wrong side of the break to receive any electric energy from that source; and the only source from which it could become charged with electricity (so far, at least, as the record discloses) was its contact with the uninsulated wire belonging to the defendant.

The issues were submitted to a jury, which returned a verdict for the plaintiff. Motion for new trial was denied, and judgment rendered on the verdict in plaintiff's favor.

Turning to the appellant's argument, we find the discussion confined to the following propositions, and to them alone can we give attention.

I. Error is assigned upon the denial of defendant's motion to direct a verdict in its favor on the ground that the evidence was not sufficient to support a finding that the negligence of 

1. NEGLIGENCE: the defendant was the proximate cause of the proximate cause: plaintiff's injury. Sustaining this position, it uninsulated electric wire. is said by counsel that it was a "physical impossibility" for plaintiff to have received a shock in the manner

stated by him, for the reason that it is shown without dispute that the wire was in such position that any current it carried would have passed into the earth before it reached the point where plaintiff touched it.

We are compelled to differ with counsel concerning the record at this point. No witness so testifies. Defendant's witnesses do not say that no shock could have been received. On the contrary, they admit some current would or might be so transmitted, but say, in substance, that they do not see how a current of sufficient power to have produced injurious results could have been transmitted. It will be seen from the record that this opinion of the witnesses (and it is all a matter of opinion) is based upon the simple proposition that the wire between the point where plaintiff took hold of it and the place where it crossed defendant's live electric light wire lay on the earth, and would necessarily have grounded the greater part of the current, leaving only a slight charge to reach plaintiff. The court cannot say, as a matter of law, that no injurious current can be transmitted under such circumstances. Even if, when the broken strand was lying inert upon the ground, it might serve as a perfect conductor to carry the current into the earth, who can say that, as plaintiff picked it up, with the idea of throwing it into the alley, the contact of the wire with the ground was not for an instant severed, or so lessened that the charge of elec- tricity carried by it was instantly diverted, in whole or in part, through the person of the plaintiff? We are satisfied that the record presents no case on which the court can say that it was impossible for the plaintiff to have received an electric shock, as alleged by him.

It is next said that it was the falling of the telephone wire, over which defendant had no control, which caused the accident, and not the lack of insulation of the electric wire. This objection, we assume, is grounded upon the thought that the falling of the telephone wire and its contact with the defendant's exposed electric wire constitute an independent intervening cause, sufficient to relieve defendant from liability for the injury of which plaintiff complains; but we think the evidence, most of which is undisputed, leaves no room for the application of that principle. It is not questioned that, in cities and towns, insulation of elec-

tric light wires is a reasonably necessary precaution against danger. The necessity is greatly emphasized where aerial wires of various kinds and uses are so multiplied or congested that accidental contact or connection between them may convert the whole array into instruments of death. It is a matter of common knowledge and observation that telephone wires are ordinarily of comparatively small size, and that not infrequently some strand breaks; and the possibility that the fallen or swaying ends of the broken wire may come in contact with unprotected electric light or power lines, if any there be in that vicinity, is an ever-present hazard; and this is especially true where these various lines are attached to the same poles. The authorities are uniform that companies and individuals constructing and operating light plants and other utilities employing electric power are bound to exercise a high degree of care, not only in the work of such construction, but in vigilant supervision and inspection to maintain the same in safe condition, and to keep the highly destructive power under control.

In the present instance, the defendant's line was strung on the same pole, beneath a number of telephone wires. If one of the upper wires should break, the severed parts of the broken strand would naturally drop, and nothing would be more likely than contact between one or both of these loose ends and the electric wire. This hazard must have been visible to the defendant; and if, under such circumstances, it permitted—as the evidence tends to show it did permit—its electric wire, thus situated, to remain for months partially denuded of its protecting insulation, it was negligent; and if, by reason of such negligent failure to protect its wire, the falling telephone line was brought into contact with it, and became charged with electricity, and plaintiff, without negligence on his own part, was thereby injured, he is entitled to recover. It is no answer to his suit for damages to say that he did not come into direct touch with defendant's wire, or to say that, but for the falling of the telephone wire, over which defendant had no control, the injury would not have occurred. It did know the situation, big with possibilities of danger; it took the chances of placing its wire on the same pole, and directly under the telephone wires; it knew that its

own wire was in condition to charge with electricity any other wire resting upon or against it at the exposed point; and the fact that the peril thus created would not have eventuated in actual injury to the plaintiff, except for the fall of the telephone wire, for which defendant was not responsible, but of the liability to which defendants must have been aware, does not serve to break the line of causation between the defendant's failure of duty and plaintiff's injury.

The principle is nowhere better stated than in the opinion by Mr. Justice Strong, in the case of *Milwaukee & St. P. R. Co. v. Kellogg*, 94 U. S. 469, where he says:

"The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market place. 2 Bl. Rep. 892. The question always is, Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

To the same effect, see *Lane v. Atlantic Works*, 111 Mass. 136.

In *Richmond L. H. & P. Co. v. Rau*, 184 Ind. 117 (110 N. E. 666),—a case in principle quite like the one now before us, where the light company's negligence created the dangerous condition from which injury occurred to plaintiff, through the

intervention of the negligence of a traction company,—the court held that, while the immediate cause of the accident was the negligent act of the traction company, the electric light company's negligence in permitting the dangerous condition to arise and continue was the proximate cause of the accident.

In *Brady v. Northwestern Ins. Co.*, 11 Mich. 425, it is said:

"That which is the actual cause of the loss, whether operating directly or by putting intervening agencies, the operation of which could not be reasonably avoided, in motion, by which the loss is produced, is the cause to which such loss should be attributed."

Another case having close similarity to this is *Southwestern T. & T. Co. v. Shirley*, (Tex.) 155 S. W. 663. In that case, appellant's uninsulated wire fell across the line of another company, and came in contact with a heavily charged electric wire, when plaintiff, coming in contact with the first-mentioned wire, received an injury, and sued the company. On appeal from a judgment against it, the contention was made that plaintiff's injury was not the proximate result of the fall of the uninsulated wire. In overruling the point, the court says:

"The proximate cause of the injury in this case was the falling of the uninsulated wire, without which the accident could not have occurred. There was no intervening agency to interrupt the responsible connection between the negligent act and the agency, and the character of the accident must have been foreseen by appellant. As quoted by this court in *Wehner v. Lagerfelt*, 27 Tex. Civ. App. 520 (66 S. W. 221): 'If it required both agencies to produce the result, or if both contributed thereto as concurrent forces, the presence and assistance of one will not exculpate the other, because it would still be the efficient cause of the injury. The intermediate cause must supersede the original wrongful act or omission, and be sufficient of itself to stand as the cause of the plaintiff's injury, to relieve the original wrongdoer from liability.' In this case the accident could not have occurred if the uninsulated wire of appellant had not fallen upon the heavily charged wire of the Gas Company. The electricity would not have been conveyed from the last-mentioned wire but for the fact that appellant's wire broke and fell upon the lower wire, and being uninsulated carried the

electricity of the lower wire to the street and into the body of appellee. Such breakage of the wire and its contact with the wires beneath was reasonably to be anticipated by appellant. *Gas & Electric Co. v. Speegle,* 60 S. W. 884. It may be true that the electricity would not have been carried by appellant's wire if the Gas Company's wire had been properly insulated, but that does not relieve appellant from liability, but merely made the Gas Company a joint tort-feasor with it.''

On the same subject, this court has said:

''While there are some loose expressions in the books to the effect that one is not liable for negligence unless the results of his acts might reasonably have been foreseen by him, the true doctrine, as we understand it, is that it is not necessary to a defendant's liability that the consequences of his negligence should have been foreseen. It is sufficient if the injuries are the natural, though not the necessary or inevitable, result of the wrong; such injuries as are likely, under ordinary circumstances, to ensue from the act or omission in question. The test, after all, is, Would ordinary prudence have suggested to the person sought to be charged with negligence that his act or omission would probably result in injury to someone? The particular result need not be such as that it should have been foreseen. *Palmer v. R. R. Co.,* 124 Iowa 424; *Hazzard v. City,* 79 Iowa 106; *Doyle v. R. R. Co.,* 77 Iowa 607; *Osborne v. Van Dyke,* 113 Iowa 557. In applying this doctrine to cases where there is an intervening agency, it is generally held that the intervening act of an independent voluntary agent does not arrest causation, nor relieve the person doing the first wrong from the consequences thereof, if such intervening act was one which would ordinarily be expected to flow from the act of the first wrongdoer.'' *Burk v. Creamery Pkg. Mfg. Co.,* 126 Iowa 730, 734.

Again, it has been well said that proximate cause is that which originates and sets in motion the dominating agency that necessarily proceeds through other causes as mere instruments or vehicles in a natural line of causation to a result. *New York, C. & St. L. R. Co. v. Hamlin,* 170 Ind. 20.

In *Hebert v. Lake Charles I. L. & W. Co.,* 111 La. 522, a telephone wire fell upon an electric light wire at a point where the insulation had been worn off, with the result that the latter

wire was burned in two, so that the severed ends fell into the street, with resulting injury to the plaintiff. The electric company was held liable in damages, because the falling of the telephone wire upon the wire below would have been attended with no injury, but for the uninsulated condition of the electric wire.

For a copious note of the authorities of this general character, see *Hebert v. Lake Charles I. L. & W. Co.*, 100 Am. St. 530. See, also, *Macon v. Paducah St. R. Co.*, 110 Ky. 680; *Wagner v. Brooklyn Heights R. Co.*, 69 App. Div. 349 (74 N. Y. Supp. 809); *Gannon v. Laclede G. L. Co.*, 145 Mo. 502; *Rowe v. Taylorville Elec. Co.*, 114 Ill. App. 535; *Rowe v. New York & N. J. Tel. Co.*, 66 N. J. L. 19 (48 Atl. 523); *Daltry v. Media Elec. L. H. & P. Co.*, 208 Pa. 403 (57 Atl. 833).

Finally, upon this branch of the case, appellant takes the position that there is no more reason for attributing the plaintiff's injury to an electric shock from the electric light wire than for ascribing it to the electricity with which the telephone wire would have been charged, had there been no contact with the light company's wire. The conclusion so contended for is not justified by the record. It is shown that the light wire was charged with electricity, and that the telephone wire was in contact with it at an uninsulated point, and extended thence to the earth below. Enough of the mysteries of electricity has become matter of common knowledge to warrant the inference that the hanging wire became charged with the current from the point of contact earthward. We find no evidence that the broken telephone wire was charged with any electricity except such as it received by its contact with the light wire. The hanging wire was on the opposite side of the break from the central station, and, even if it were carrying a normal charge of 22 volts, it is shown that this was but one fifth of the normal charge of a secondary light wire. Moreover, if it be conceded that the telephone wire was carrying current of its own, such current, uniting with the charge received from the light wire, would be no more than a concurring cause, and not an intervening cause of the injury, and recovery could then be had against either company, or both. *Hebert v. Lake Charles I. L. & W. Co.*, 111 La. 522; *Central Union Tel. Co. v. Sokola*, 34 Ind. App. 429 (73 N. E. 143); *Warren v. City Elec. R. Co.*, 141 Mich. 298;

*San Antonio G. & E. Co. v. Speegle,* (Tex) 60 S. W. 884; *Richmond L. H. & P. Co. v. Rau,* 184 Ind. 117; *Crandall v. Consolidated T. T. & E. Co.,* 14 Ariz. 322 (127 Pac. 994); *Snyder v. Leavenworth L. H. & P. Co.,* 98 Kan. 157 (157 Pac. 442).

II.   The court charged the jury that:

"An independent cause, intervening between the act of defendant and the injury to plaintiff, will prevent the act of defendant from being the proximate cause of the injury, unless such intervening cause could have been foreseen by defendant to be a not improbable occurrence."

2. NEGLIGENCE: proximate cause: independent intervening cause.

The point is made in appellant's brief, though not discussed in argument, that the qualification of the rule found in the final clause of the instruction is erroneous.   Though not stated with the clearness which otherwise marks the instructions, we are satisfied that the charge in this respect is not open to the criticism made upon it.   The qualification of the rule objected to, when fairly construed, means no more than that, if the alleged intervening cause is of a character or kind which the defendant ought reasonably to have anticipated as likely to occur, then, though "intervening" in order of time, it is not an independent intervening cause which supersedes the negligence of the defendant as the proximate cause of the injury.   This is a correct statement of the law.   *Anderson v. Evansville B. Assn.,* 49 Ind. App. 403' (97 N. E. 445); *Lane v. Atlantic Works,* 111 Mass. 136; *Griggs v. Fleckenstein,* 14 Minn. 81.   One who is chargeable with negligence is liable for all resulting injury and damage which, as an ordinarily prudent man, he ought to have anticipated as likely to occur; and, if an alleged independent cause is one which he ought to have foreseen, his negligence will remain the proximate cause (or at least *a* proximate cause), within the meaning of the law.

The instruction given in the present case is quite in line with the rules as here quoted.   See, also, cases cited in 22 Ruling Case Law, 119 to 122.

III.   Exception is also taken to the court's charge upon the subject of contributory negligence; but we find nothing therein which is vulnerable to the objection made.   The most which can be said is that the court, having stated the admittedly

correct rule in one paragraph, restated it in negative form in another paragraph, as to the effect of a finding that plaintiff himself was guilty of negligence contributory to his own injury. This, counsel say, was, in effect, placing the burden on the defendant to negative plaintiff's contributory negligence. Reading the charge as a whole, it is very clear that the court did not intend to be so understood, and that the jury could have been in no manner misled. The exceptions to the court's charge are overruled.

IV. The jury assessed plaintiff's damages at $10,000, and judgment was entered for that sum. Appellant objects to this verdict as excessive, and we are inclined to the conclusion that the complaint is not unwarranted. When in-
3. NEW TRIAL: ver- jured, plaintiff was 46 years old. By occupa-
dict: excessiveness. tion, he was salesman and collector for a local business concern, earning $12 to $14 per week; had also had several years' experience in working a drill press in a local factory. He was in a fair state of health. From his injury, and up to the time of the trial below, he had been disabled; had been very sick for a considerable period, and became greatly emaciated, but his condition had improved, in some degree. His physician is of the opinion that his disability is permanent, and there is no expert evidence to the contrary. If entitled to a verdict at all (and the jury has so found), he should receive substantial damages; but, under all the circumstances, we think this end will be fairly attained if the amount of his recovery is reduced to $6,500.

If the appellee shall, within 30 days from the filing of this opinion, file with the clerk of this court his written consent to such modification, the judgment in his favor will be affirmed for the sum of $6,500, with interest thereon from the date of the return of the verdict; otherwise, the judgment appealed from will be reversed, and cause remanded to the court below for a new trial. The costs will be taxed to the defendant.—*Modified and affirmed.*

PRESTON, STEVENS, and DE GRAFF, JJ., concur.